**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Therl Taylor #260961, | ) | C/A No. 2:13-CV-3449-RMG-MGB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Catherine Amason, SCDC Mailroom | ) | |
| Supervisor; Misha Michelle, Mailroom | ) | |
| Attendant; Wayne Thompson, SCDC | ) | |
| Lieutenant; A. Sellars, SCDC | ) | |
| Disciplinary Hearing Officer; D. Seward, | ) | **REPORT AND RECOMMENDATION** |
| SCDC Major; Jeanne McKay, SCDC | ) | **OF MAGISTRATE JUDGE** |
| Associate Warden; Jane Doe(s), | ) | |
| Employee; Jon Doe(s), Inmate; Jane | ) | |
| Chisum, C/O; John Evry, C/O; Chris | ) | |
| Florian, SCDC Office of General | ) | |
| Counsel Attorney; William Byers, SCDC | ) | |
| Director; | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The Plaintiff, appearing *pro se* and *in forma pauperis*, brings this action under Title 42,

United States Code, Section 1983.  The Plaintiff is currently in the custody of the South Carolina

Department of Corrections ("SCDC") and housed at Ridgeland Correctional Institution.[1]  This

matter is before the court on the Motion for Summary Judgment on Behalf of Defendants

Amason, Byers, Chisum, Evry, Florian, McKay, Michelle, Sellars, Seward and Thompson (Dkt.

No. 55.)  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local

Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to

a United States Magistrate Judge for consideration.

---

[1] The events alleged in the Complaint happened while the Plaintiff was housed at Kershaw
Correctional Institution ("KCI").  (Dkt. No. 1 ¶0.3.)

The Plaintiff brought this action on or about December 11, 2013. (See Dkt. No. 1.) On March 12, 2014, Summonses were issued to Defendants Amason, Byers, Chisum, Evry, Florian, McKay, Michelle, Sellars, Seward, and Thompson. (Dkt. No. 13.) On May 8, 2014, the District Court issued an Order dismissing Defendants Jon Doe(s) and the South Carolina Department of Corrections and amending the Complaint to include claims against Defendant Jane Doe(s). (Dkt. No. 30.) On May 12, 2014, a summons was issued for Defendant Jane Doe(s), which was never served and returned as unexecuted on July 3, 2014. (Dkt. Nos. 36; 45.) On May 16, 2014, the remaining Defendants filed their Answer denying liability and raising affirmative defenses. (Dkt. No. 38.) After receiving an extension, the Defendants filed their Motion for Summary Judgment on September 29, 2014. (Dkt. No. 55.) The following day, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal and summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 56.) The Plaintiff responded to the motion on December 7, 2014 and supplemented his response on December 17, 2014 and on February 20, 2015. (Dkt. Nos. 72; 74; 79.)

## ALLEGED CLAIMS & FACTS

The Complaint is organized by first stating a list of legal claims; then an introductory narrative identifying the parties, stating the jurisdiction of the court and giving background information about the Plaintiff and his life in prison; and finally the Plaintiff lists each defendant by name. (Dkt. No. 1.) Following each defendant's name, the Plaintiff lists out factual allegations pertaining to that particular defendant. The Plaintiff makes his claims pursuant to the following law:

I.    First Amendment
II.   Fourth Amendment
III.  Fifth and Fourteenth Amendments Due Process & Equal Protection
IV.   Sixth Amendment

V.      Seventh and Eigth [sic] Amendments- Deliberate Indifference
VI.     [In]adequate Access to the Courts and [Imp]roper Conditions of Confinement
VII.    Retaliation, VII.i) Assault, VII.ii) Conspiracy, VII.iii) Harassment
VIII.   Respondeat Superior
IX.     41 U.S.C. § 1983
X.      18 U.S.C. § 3626

(Dkt. No. 1 at 3.)

Defendant Catherine Amason was a mailroom supervisor at KCI.  (Dkt. No. 1 ¶ 1.) Defendant Amason undertook "patterns of abuse and wrongdoing against" the Plaintiff including "verbal abuse/civil assault, intimidation, mistreatment, harassment, retaliation and other threatening" conduct.  (Id.  ¶ 1.1.)  The Plaintiff "calmly, kindly yet firmly and persistently insisted" that Defendant Amason perform her job.  ((Id.  ¶ 1.2.)  Defendant Amason interfered with the Plaintiff's legal mail (Id. ¶ 1.3.)  Defendant Amason threatened to "write up" the Plaintiff and place him in the segregation unit for false reasons.  (Id. 1.3.1)  The Plaintiff reported Defendant Amason to her supervisors for her conduct, and she retaliated against him by increasing her ill treatment of the Plaintiff.  (Id. ¶¶ 1.1.2; 1.3.3.)  Defendant Amason then started "inappropriate relations unprofessionally" with Defendant Wayne Thompson, and the two began to conspire to "get rid" of the Plaintiff.   (Id. ¶ 1.3.5.)   The Plaintiff logged over fifty conversations between Defendant Amason and the Plaintiff, between Defendant Amason and Defendant Michelle, and between Defendant Thompson and the Plaintiff.  (Id. ¶ 1.4.)  Defendant Amason read the Plaintiff's legal mail and refused to mail other legal mail for him.  (Id. ¶ 1.4.1.) She admitted she does not like the Plaintiff "because he's so aggravating" and "spread this opinion to co-workers."  (Id.)  The Plaintiff subscribed to *Entrepreneur* magazine and received three issues but the fourth issue was returned to sender by Defendant Amason because the Plaintiff had moved to a "safer room."  (Id. 1.4.3.)

Defendants Evry, Florian and Byers denied the Plaintiff basic photocopying required to litigate cases in court. (Id. ¶ 1.7.1.) The Plaintiff instead must mail his legal document to third party individuals and have them mail copies back to him. (Id. ¶ 1.8.2.)

Defendant Amason has a history of ill treatment of inmates and wrongdoing. (Id. ¶ 1.10.) Three other inmates have filed complaints against her. (Id. ¶¶ 1.11-1.13.) Defendant Amason regularly yells at inmates, and they fear she will retaliate against them. (Id. ¶ 1.15.) The Plaintiff confronted Defendant Amason about her behavior, and she "spazed out."

In December of 2011, the Plaintiff attempted to mail legal mail to his power of attorney by giving it to Defendant Misha Michelle.[2] (Id. ¶ 1.6.) Defendant Michelle processed the package for the Plaintiff. (Id. ¶¶ 1.6.1-1.6.2.) Defendant Michelle helped the Plaintiff at 9 A.M. in the mailroom on December 6, 2011. (Id. ¶2.; Dkt. No. 1-1 at 2.) The "incident report" that states Defendant Amason helped him on that day and time is not true. (Id.) Defendant Michelle "mostly complied with her basic job duties" except when Defendant Amason was around. (Dkt. No. 1 ¶ 2.1.) Defendant Michelle told the Plaintiff being around Defendant Amason was like "being under a spell." (Id. ¶ 2.4.) The Plaintiff "believe[s]" Defendant Michelle returned some of his legal mail. (Id. ¶ 2.1.)

Defendant Wayne Thompson, an SCDC correction officer, threatened and intimidated the Plaintiff on three occasions. (Id.¶¶ 3.1-3.2.) He treated other inmates the same way. (Id.) Defendant Thompson was recruited by Defendant Amason to sign off on a false incident report concerning December 6, 2011. (Id. ¶ 3.4.) The Plaintiff believes Defendant Thompson conspired with Defendants Amason and Seward to cause the Plaintiff serious injury. (Id. ¶ 3.5.)

---

[2] Defendant Michelle was a mailroom worker at KCI.

Defendant A. Sellers was an SCDC Disciplinary Hearing Officer and presided over a hearing involving the Plaintiff.  (Id. ¶¶ 4-4.3.)  At his hearing, Defendant Sellers denied the Plaintiff access to a lawyer, the right to confront his accusers, a fair hearing, the ability to review documents, and the ability to fully answer questions.  (Id. ¶¶ 4.1-4.8.)  Defendant Sellers conspired to "breach and botch" the hearing because it was what "higher ups" from SCDC wanted. (Id. ¶ 4.8.)

Defendant D. Seward was an SCDC Major during the times alleged in the Complaint. (Id. ¶ 5.)  Defendant Seward is a supervisor and did not adequately train and supervise other defendants.  (Id. ¶ 5.1)  Defendant Seward threatened the Plaintiff and tried to start fights with him.  (Id. ¶¶ 5.3.1; 5.3.)  Defendant Seward denied the Plaintiff a pen and paper.  (Id.  ¶ 5.5.) Defendant Seward allowed the Plaintiff to listen to a cassette tape of his disciplinary hearing. (Id.)

Defendant Jeanne McKay was an associate warden at KCI and was "directly responsible" for the law library at KCI.  (Id. ¶ 6.1.1.)  Defendant McKay hired a law librarian that was not qualified because she has an online degree.  (Id. ¶ 6.1.1.)  Defendant McKay entered into a conspiracy with Defendants Amason, Florian, Thompson, and Jane Doe.  (Id ¶ 6.3.)  Defendant McKay failed to respond to the Plaintiff's written requests and failed to give him forms to complain.  (Id. ¶ 6.2; 6.8.2.)  Defendant McKay failed to train, supervise, and control other SCDC employees including Defendant Evry.  (Id. ¶ 6.4.)  The Plaintiff believed Defendant McKay "rig[ged]" an election in SCDC to ensure the Plaintiff would not win.  (Id. ¶ 6.9.)

Defendant Jane Chisum, an SCDC corrections officer, had an inappropriate relationship with an inmate and known gang member named Link Peterson.  (Id. at ¶ 9.2.)  Peterson and another inmate ran against the Plaintiff in an election to be on the Individual Representative

Committee ("IRC") at KCI.  (Id. at ¶ 9.1.)  Defendant Chisum told inmates to vote for black candidates.  (Id. at ¶ 9.3.)  After the election, the Plaintiff noticed many ballots had not been collected by Defendant Chisum, but instead were left on the floor.  (Id. at ¶ 9.4.)  The Plaintiff noted seven of the ballots on the floor were votes for him.  (Id.)  Defendant Chisum demanded that the Plaintiff turn over the ballots he collected or he would be punished.  (Id.)  The Plaintiff complied except for one ballot he saved to submit to this court.  (Id.)  The Plaintiff attempted to discuss the election issues with Defendants McKay and Evry.  (Id. ¶ 9.5.)  The Plaintiff was elected an alternate, not a representative, which is inconsistent with his polling of inmates both before and after the election.  (Id. ¶¶ 9.6-9.8)  At the next IRC meeting, Defendant Evry stated he wanted the Plaintiff off of the committee and privately told other committee members the same. (Id. ¶ 9.10.)  On January 11, 2011, Defendant Chisum searched the Plaintiff's cell and left it in disarray.  (Id. ¶ 9.16.a)  Defendant Chisum went on to search his cell on April 11, 2011; June 9, 2011; and June 16, 2011.  (Id. ¶ 9.16.)  The Plaintiff alleges that Chisum repeatedly was rude to him, had suspicious conversations with other inmates, and showed favoritism towards other inmates.  (Id.)

Defendant Evry, a correctional officer for SCDC, worked in the inadequate law library at KCI and failed to improve the library.  (Id. ¶¶ 10.1-10.2.)  Additionally, Defendant Eury failed to collect all of the IRC election ballots.  (Id. ¶ 10.3.)  Defendant Evry would not let the Plaintiff fully express himself at IRC meetings and threatened to write him up for talking to other inmates about issues before the IRC.  (Id. ¶¶ 10.4.1-10.5.)

Defendant Christopher Florian is SCDC Assistant General Counsel.  (Dkt. No. 55-1 at 4.) Defendant Florian conspired with Defendants McKay, Sellers, Seward, and Amason to injure and harm the Plaintiff.  (Dkt. No. 1 ¶ 11.)  Defendant Florian gave a written statement against the

Plaintiff at his disciplinary hearing, depriving the Plaintiff of a chance to question him.  (Id. ¶ 11.1.)  Defendant Florian refused to give the Plaintiff a transcript of his disciplinary hearing.  (Id. ¶ 11.3.)  Defendant Florian represented SCDC against the Plaintiff in agency proceeding and before the Administrative Law Court.  (Id. ¶ 11.2.)

Defendant William Byers is the Director of SCDC. (Id. ¶ 12.)  Defendant Byers "failed to properly acknowledge all assertions" in the Plaintiff's lawsuit.  (Id. ¶ 12.1.)  Defendant Byers "failed to correct injustices nor mitigate the injuries or…damages prior to Plain[tiff]'s filing this…suit."  (Id.)

The Plaintiff seeks declaratory relief stating the Plaintiff's rights have been violated under 42 U.S.C. § 1983.  (Id. at 34.)  Additionally the plaintiff seeks an injunction against any further threats; that his disciplinary infractions be vacated and destroyed; no further retaliation or harassment; $10,000 in lost wages; "better work detail;" proper filing of all past tax returns including a stimulus refund; return of all of the Plaintiff's "intellectual property" and legal materials; adequate access to courts and the mailroom; an adequate law library; sufficient time in an adequate law library; "respect & dignity;" $13,000 in actual and compensatory damages; punitive damages in the amount of $1,000 from Defendant Amason and Chisum; and costs.  (Id.)

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir.

2010)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  In ruling on a motion

for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable

inferences are to be drawn in that party's favor.'" <u>Id.</u> (quoting <u>Hunt v. Cromartie</u>, 526 U.S. 541,

552 (1999)); <u>see also</u> <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-24 (4th Cir. 1990).

## ANALYSIS

"A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (internal

quotations omitted).  Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Rule 8 "does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 555 (2007)). A complaint must "state a claim to relief that is plausible

on its face" to survive a motion to dismiss.  <u>Id.</u>   "The complaint must provide enough specificity

to 'give the defendant fair notice of what the plaintiff's claim is.'" <u>Pringle v. City of Charleston</u>

<u>Police Dep't</u>, No. C/A 2:06-CV-3295-PMD, 2007 WL 295629, at *5 (D.S.C. Jan. 29, 2007)

(quoting <u>Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit</u>, 507 U.S.

163, 168, (1993) (internal quotation omitted)).

### 1.  § 1983 Claims

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he

or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of

the United States," and (2) "that the conduct complained of was committed by a person acting

under color of state law." <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d

653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); <u>see also</u> <u>Gomez v. Toledo</u>, 446 U.S. 635, 540

(1983); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

The majority of the discernable claims in the Plaintiff's Complaint are under §1983. The court has liberally read the Complaint and the Plaintiff's other filings in his favor.

### a. Access to Courts Claims

To establish that prison officials denied an inmate access to the courts, the deprivation must have denied the inmate of a "reasonably adequate opportunity" to challenge their sentence or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 828 (1977); Lewis v. Casey, 518 U.S. 343, 354–55 (1996). Deprivation of access to courts "in some theoretical sense" does not establish a claim. Lewis, 518 U.S. at 351. A plaintiff seeking to claim deprivation of access to courts must specifically allege an actual injury i.e., that the conduct hindered his efforts to pursue a non-frivolous legal claim. Id. at 351–53; see also Magee v. Waters, 810 F.2d 451 (4th Cir.1987) (an inmate in a county jail where he was only allowed one hour per week to use a law library missing volumes and statutes failed to show actual injury to establish a claim for deprivation of access to courts).

In viewing the evidence in a light most favorable to the Plaintiff, no genuine issue of material fact exists as to the Plaintiff's claims Defendant Amason denied him access to courts. The Plaintiff alleged that Defendant Amason "frequently interfered with Plaintiff's incoming and outgoing legal mail, causing prejudicial delay or no delivery at all." (Dkt. No. 1 ¶ 1.3.) He also stated she read his legal mail and refused to deliver his legal mail. The Plaintiff never alleged what pieces of mail he is referring to or when this occurred. His allegations are little more than bare assertions. (Id. at 1.4.1.) The only specific evidence Defendant Amason opened his mail is

not in his Complaint, but contained in the incident report that led to his disciplinary hearing and charge. (Dkt. No. 55-2 at 2.) In that incident, Defendant Amason felt an object and opened the mail discovering typewriter tape and another inmate's legal paperwork. (Id.) The Plaintiff contends Defendant Amason was not involved in the opening of this legal mail, but rather Defendant Michelle received his legal mail that day. (Dkt. No. 1 ¶¶ 1.6.1-1.6.2.)

The Plaintiff's claims against Defendants Amason and Michelle fail because there is no evidence in the record to support that either Defendants' actions deprived the Plaintiff of the ability to challenge his conviction or the conditions of his confinement. The Plaintiff failed to allege any actual injury that occurred from Defendants Amason or Michelle's opening or failing to deliver his legal mail. Additionally, to the extent the Plaintiff's claims are that Defendants Amason and Michelle negligently tampered with his legal mail as opposed to purposefully tampered with it to deny him access to courts, the Plaintiff's claims are not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct. . . . "); see also Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir.1989) (prison guard's opening of inmate's legal mail outside of the inmate's presence was, at most, negligence, and did not reach the level of intent necessary for constitutional violation).

In viewing the evidence in a light most favorable to the Plaintiff, no genuine issue of material fact exists as to the Plaintiff's claims that Defendants Evry, Florian, and Byers denied him access to courts. The Plaintiff alleges Defendant Evry, Florian, and Byers deny him access to courts by not allowing him to "basic photocopies" of legal filings (Dkt. No. 1. ¶1.7.1). The Plaintiff alleges that the SCDC policy denying him photocopies is unconstitutional and that he is

not allowed to photocopy items from the law library.  (Id. ¶¶ 1.8-1.8.4.)  The Plaintiff's claims

regarding the Defendants denying him photocopies does not amount to a claim under §1983.

"Inmates do not have unlimited rights to photocopies or photocopying machines." Lyons v.

Clark, 694 F.Supp. 184, 188 (E.D.Va.1988), aff'd, 887 F.2d 1080 (4th Cir.1989); see also

Johnson v. Moore, 948 F.2d 517, 521 (9th Cir.1991) ("A denial of free photocopying does not

amount to a denial of access to the courts.").  The Plaintiff did not allege any actual injury

resulting from his deprivation of photocopies.  The Plaintiff has failed to state an actionable

claim.[3]

The Plaintiff repeatedly alleges that the KCI law library is inadequate.  (See Dkt. No. 1 ¶¶

6.1.1; 10.1-10.2.)  The Plaintiff asserts these allegations against Defendants McKay and Evry.

(Id.)  The Plaintiff seeks an adequate law library and sufficient time in the law library as

damages to this lawsuit.  (Id. at 34.)  The Plaintiff failed to allege or present any evidence of any

actual injury or prejudice suffered because of the state of KCI's law library.  As with other

access to courts claims, this is a required element that must be pled in order to establish the

claim.  Nelson v. Lieber Corr. Inst., No. 6:08-CV-779-HMH-WMC, 2008 WL 2230856, at *4

(D.S.C. May 28, 2008) (holding that a claim alleging the law library at a state prison is

inadequate must allege an actual injury) (citing Lewis v. Casey, 518 U.S. 343 (1996); Michau v.

Charleston County, 434 F.3d 725 (4th Cir.2006); Magee v. Waters, 810 F.2d 451 (4th Cir.1987)).

This court finds that the Plaintiff has failed to state a claim against any defendant arising from

the adequacy of the KCI law library.

### b.  First Amendment Claims

---

[3] To the extent it is a claim for denying the Plaintiff access to courts, the Plaintiff's allegation
that Defendant Seward denied the Plaintiff access to a pen and paper fails as the Plaintiff did not
allege any actual injury.  (Dkt. No. 1 ¶ 5.5.)

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Cornell v. Woods, 69 F.3d 1383, 1388 (8th Cir. 1995) (internal quotations omitted). The Plaintiff alleges Defendant Amason retaliated against him after the Plaintiff complained about her conduct. To establish a claim for First Amendment retaliation under § 1983, the Plaintiff must show "that (1) he engaged in protected First Amendment activity, (2) [the defendant] took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and [the defendant's] conduct." Booker v. S.C. Dep't of Corr., 583 F. App'x 43, 44 (4th Cir. 2014) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir.2005)).

The Plaintiff alleges he reported Defendant Amason's "inappropriate behavior" to Defendant Amason and to her supervisors. (Dkt. No.1 ¶ 1.1.2.) After he reported Defendant Amason, she "stepped up her wrongdoing" and caused the Plaintiff "even more hardship and harm, yet in a subtle, discreet manner." (Id. ¶¶1.1.2; 1.3.3.) Subsequently, Defendant Amason's "demeanor and attitude was clearly more hostile, confrontational and belligerent." (Id ¶ 1.3.4.) The Plaintiff's retaliation allegations against Defendant Amason are too vague to state a claim. Assuming the Plaintiff engaged in protected speech,[4] he does not allege what the Defendant actually did to "adversely affect[] his First Amendment rights." He simply makes naked assertions that Defendant Amason caused him harm and hardship. The Plaintiff does not claim her actions affected his First Amendment rights. The Plaintiff's claims about Defendant

---

[4] "Similarly, a prisoner's oral and written complaints to a warden about the misconduct of the prisoner's job supervisor are protected speech under the First Amendment." Davis v. Straub, No. 1:07-CV-156, 2009 WL 4908433, at *1 (W.D. Mich. Dec. 11, 2009).

Amason's change in attitude toward him do not rise to a level of Constitutional inquiry. This court finds the Plaintiff fails to state a retaliation claim against Defendant Amason.

The Plaintiff alleges Defendant Amason infringed on his constitutional rights by stopping his year-long subscription to Entrepreneur magazine after only three months. (Id. 1.4.3.) "Interference with an inmate's mail may constitute a cognizable claim under § 1983 in certain circumstances." Corey v. Reich, No. 0:02-CV-2801-12, 2004 WL 3090234, at *10 (D.S.C. Mar. 9, 2004), aff'd, 103 F. App'x 753 (4th Cir. 2004) (citing Witherow v. Paff, 52 F.3d 264, 265 (7th Cir.1995) (prisoners enjoy a First Amendment right to send and receive mail)). A Plaintiff's right to send and receive mail is subject to regulations based on "reasonable precautions to ensure that prison mail is not used for illicit purposes." Id. In the case at bar, the Plaintiff paid for a year- long subscription for *Entrepreneur* magazine. (Id. 1.4.3.) After receiving the magazine for 3 months, Defendant Amason returned the fourth issue of the magazine to the sender because the Plaintiff had moved rooms. (Id.) There is no evidence in the record concerning the remaining issues of the magazine. ""[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Pell v. Procunier, 417 U.S. 817, 822 (1974) (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). Prison officials are given great deference on all administrative matters unless conduct rises to a constitutional violation. Sweet v. S. C. Dep't of Corr., 529 F.2d 854, 859 (4th Cir. 1975). A single instance of the Plaintiff not receiving his magazine because he had changed rooms is not a matter of constitutional concern.[5] This court finds the Plaintiff has failed to state a §1983 claim regarding his fourth issue of *Entrepreneur* magazine.

---

[5] To the extent the Plaintiff alleges the failure to deliver his magazine was the result of negligence, his claim is not actionable. See Daniels, 474 U.S. at 328.

The Plaintiff's First Amendment claims against Defendant Evry revolve around two discreet incidents.  In the first, the Plaintiff spoke to other inmates about having cable televisions installed in prison and how IRC meetings were conducted.  (Dkt. No. 74-2.)  After the Plaintiff expressed his views to the other inmates, Defendant Evry "threatened to put [the Plaintiff] in lock up and write [the Plaintiff] up."  (Id.)  When the Plaintiff asked why he would be locked up, Defendant Evry replied he would "find something."  (Id.)  The Plaintiff does not allege he was actually retaliated against for speaking to the other inmates nor does he allege the threat chilled any future speech.  "A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity."  The Baltimore Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006).  "The determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one—we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case."  Id. at 416.  In the case at bar, there is no evidence in the record to satisfy the objective requirement in Baltimore Sun Co. An empty threat to write up the Plaintiff that was never acted upon would not have a chilling effect on a person of ordinary firmness.

The second incident regarded Defendant Evry's conduct at an IRC meeting.  The Plaintiff alleges that Defendant Evry did not conduct IRC meetings within SCDC policies, which included failing to use Robert's Rules of Order.  (Dkt. No. 74-2.) The Plaintiff states that Defendant Evry "used hand and finger signals and body language to not allow Plaintiff to complete his sentences or otherwise thoughts [sic]."  (Id.)  The Plaintiff states his speech was "offended and chilled."  (Id.)  As with the first incident involving Defendant Evry, the Plaintiff

has failed to provide any evidence in the record that the Defendant's actions would have a chilling effect on a person of ordinary firmness. Defendant Evry did not harm the Plaintiff or even threaten him. The Plaintiff's unspecified allegation Defendant that Evry "used hand and finger signals and body language to not allow Plaintiff to complete his sentences" is the only evidence of any adverse action in the record. A reasonable jury could not find that a person of ordinary firmness would not fully express himself based on the evidence in the case at bar.[6]

Even if Defendant Evry's actions were found to infringe on the Plaintiff's constitutional rights, Defendant Evry would be entitled to qualified immunity. "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects officers from liability for "bad guesses in gray areas" and bases liability on the violation of bright-line rules. Id. (quoting Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011)). To determine whether a defendant is entitled to qualified immunity, the court must examine whether the defendant violated the plaintiff's constitutional or statutory rights and, if so, whether the defendant's "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." Id.

Defendant Evry's "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event" because whether an inmate voicing his opinion at an internal prison committee meeting is protected speech is a matter of first impression. The court "must first identify the specific right that the plaintiff asserts was infringed by the challenged conduct at

---

[6] The Plaintiff filed a grievance based on Defendant Evry's actions. (Dkt. No. 1 ¶ 10.5) As a result of the grievance, Defendant Evry was removed from his position on the committee. (Id.) The Plaintiff filed numerous grievances in connection with this case. (See Dkt. No. 72-1.)

a high level of particularity." Edwards v. City of Goldsboro, 178 F.3d 231, 250-51 (4th Cir. 1999) (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir.1996)).  To be clearly established, "the contours of the right must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." Edwards, 178 F.3d at 251 (quoting Swanson v. Powers, 937 F.2d 965, 969 (4th Cir.1991) (internal quotations omitted)).  "In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose....'" Edwards, 178 F.3d at 251 (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir.1998) (en banc)) (alteration in Edwards).  "'[I]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.'" Edwards, 178 F.3d at 251 (quoting Jean v. Collins, 155 F.3d 701, 708 (4th Cir.1998) (en banc )) (alteration in Edwards).

In the case at bar, the right asserted by the Plaintiff is that his speech at the IRC meeting was protected.  No published case law exists from the Supreme Court of the United States, the Fourth Circuit, or the Supreme Court of South Carolina declaring whether or not the Plaintiff's speech in this case is protected by the First Amendment.[7]  This is not sufficient to clearly establish the right within this jurisdiction.  Therefore, this court recommends that Defendant

---

[7] The Plaintiff presents his speech in IRC meetings as concerning issues regarding the well-being of the prison population and efficient operation of the prison.  (See Dkt. No. 1 ¶¶ 10.4.1-10.5.) To the extent his speech at the committee is analogous to filing a grievance, whether the filing of a grievance is protected speech is a matter of first impression as well.  See Plummer v. Riley, No. 2:12-CV-3412-TLW-BHH, 2014 WL 1277903, at *11 (D.S.C. Feb. 26, 2014) Report and Recommendation adopted in part, No. 2:12-CV-03412-TLW, 2014 WL 1277897 (D.S.C. Mar. 27, 2014) ("[T]he Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment.").

Evry is entitled to summary judgment as a matter of law because he cannot be liable under the doctrine of qualified immunity as he did not violate any of the Plaintiff's clearly established rights.

### c.  Claims of Threats Made Against the Plaintiff

This court finds the Plaintiff's claims that Defendants Amason, Thompson, and Seward threatened him are not actionable under § 1983.  "Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."  Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979)).  "It is well settled that 'the use of vile and abusive language is never a basis for a civil rights action.'"  Brownlee v. Dorriety, No. 2:07-CV-0141-DCN-RSC, 2007 WL 704526, at *1 (D.S.C. Feb. 28, 2007) (quoting Sluys v. Gribetz, 842 F.Supp. 764, 765 n. 1 (S.D.N.Y.1994)).  The Plaintiff alleges that Defendant Amason threatened to "write up" the Plaintiff and send him to a segregation cell.  (Dkt. No. 1 ¶ 1.3.1.)  The Plaintiff alleges Defendant Thompson threatened and intimidated the Plaintiff of three separate occasions.  (Id. ¶¶ 3.1-3.2.; Dkt. No. 72 at 20-21.)  The Plaintiff alleges Defendant Seward threatened the Plaintiff and tried to start fights with him.  (Id. ¶¶ 5.3.1; 5.3.)  None of these allegations state a claim under § 1983 pursuant to Henslee.

### d.  Plaintiff's Disciplinary Hearing

The Plaintiff's due process claims regarding his disciplinary hearing are not valid under Wolff v. McDonnell, 418 U.S. 539 (1974), and Brown v. Braxton, 373 F.3d 501 (4th Cir. 2004). The Wolff Court defined the minimal procedural due process afforded to inmates in disciplinary proceedings.  Brown, 373 F.3d at 504.  Inmates retain the right to have written notice of the charges against them and a written statement outlining the evidence and reasoning of the hearing officer.  Id.  However, inmates are not afforded the right to confront witnesses or be represented

by counsel.  Id. at 504-505.  Inmates have a qualified right to put forth evidence and call witnesses subject to prison official's "discretion to deny witness requests, where legitimate penological interests justified excluding a witness."  Id. at 505.  "Hearing officers …may decide that legitimate penological interests justify the denial of an individual inmate's witness request, and their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration."  Id.

The Plaintiff alleges Defendant Sellers denied him access to a lawyer, the right to confront his accusers, a fair hearing, the ability to review documents, and the right to fully answer questions.  (Id. ¶¶ 4.1-4.8.)  Under Brown, The Plaintiff was not entitled to a lawyer or to confront witnesses.  The Plaintiff's conclusory claims he was not allowed to completely answer questions do not amount to a due process violation.  The audio recording of the disciplinary hearing shows the Plaintiff was given ample opportunity to testify and answer questions.  (Dkt. No. 55-2.)  At the end of the hearing, at 22:23 on the audio recording, the Plaintiff explicitly was allowed to make any statements he wanted.  (Id.)

The Plaintiff alleges Defendant Florian, who did not attend his disciplinary hearing, violated his due process rights by denying the Plaintiff a transcript of his disciplinary hearing and by not being cross examined by the Plaintiff at the disciplinary hearing.  "The lack of a transcript itself does not give rise to a constitutional violation."  Sweet v. Wende Corr. Facility, 514 F. Supp. 2d 411, 415 (W.D.N.Y. 2007).  The Plaintiff was allowed to listen to the recording of his disciplinary hearing. (Dkt. No. 1 ¶ 5.5.)  No actionable claims arise out of the Plaintiff not having a transcript of his hearing.  The Plaintiff did not have a right to confront Defendant Florian under

<u>Brown</u>.   In viewing the evidence in a light most favorable to the Plaintiff, no evidence tends to show that Plaintiff's due process rights were violated at his disciplinary hearing.[8]

### e.   Claims Regarding IRC Election

An inmate does not have a constitutionally-protected interest in an elected position within a prison.  <u>Odom v. Howes</u>, No. 1:13-CV-98, 2013 WL 2558764, at *6 (W.D. Mich. June 11, 2013).  An inmate "has no liberty or property interest in his position as an inmate representative on the warden's forum."  <u>Vandiver v. Martin</u>, 48 F. App'x 517, 519 (6th Cir. 2002) (citing <u>Hewitt v. Helms</u>, 459 U.S. 460, 471 (1983)).  The Plaintiff in the case at bar alleges that Defendants McKay, Chisum, and Evry all took actions to ensure he was not elected to the IRC.  He further alleges that when he complained about votes cast for him not being counted, his concerns were not addressed.  Section 1983 does not confer rights on individuals, but rather is a mechanism to recover when those rights are violated by state actors.  <u>See</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979).  Because the Plaintiff did not have any liberty interest in being on the IRC, he does not have any actionable claims under §1983 relating to the IRC election.

### f.   Fourth Amendment Claim

The Plaintiff alleges Defendant Chisum searched his cell on January 11, 2011, and left it in disarray.  (<u>Id.</u> ¶ 9.16.a)  Defendant Chisum again searched his cell on April 11, 2011; June 9, 2011; and June 16, 2011.  (<u>Id.</u> ¶ 9.16.)  To the extent the Plaintiff is seeking to bring a claim under the Fourth Amendment, his claims fail.  <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 557 (1979);

---

[8] To the extent the Plaintiff claims that the disciplinary proceeding violated SCDC policies, his claims are not actionable under §1983. <u>See</u> <u>United States v. Caceres</u>, 440 U.S. 741 (1978); <u>see also</u> <u>Riccio v. Cnty. of Fairfax, Va.</u>, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); <u>Keeler v. Pea</u>, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

Hudson v. Palmer, 468 U.S. 517, 527–528, 536 (1984) (Fourth Amendment has no applicability to a prison cell); Jeter v. Smith, No. 9:11-1149-JFA, 2012 WL 1570079, at *7 (D.S.C. Feb. 24, 2012) report and recommendation adopted, No. 9:11-CV-1149-JFA, 2012 WL 1570076 (D.S.C. May 3, 2012) ("plaintiff's complaint about the search of his jail cell outside of his presence is also patently without merit").

### g.  *Respondeat Superior*

Section 1983 requires personal involvement in conduct for liability to exist, and, therefore, the Plaintiff's claims of *respondeat superior* fail as a matter of law.  See Trulock, 275 F.3d at 402.  The doctrines of vicarious liability and *respondeat superior* are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). However, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Id. at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy

burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses…provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Id. (citations omitted).

The Plaintiff alleges Defendants Seward, McKay, and Byers are liable under a theory or *respondeat superior* or in their supervisory capacities.  (See Dkt. No. 1 ¶¶ 5.1, 6.4, 12; see also Dkt. No. 1 at 3.)    Nothing in the record tends to prove any of these individuals' actions as supervisors amounted to "deliberate indifference or tacit authorization of the offensive practices" as required by Slakan.  The Plaintiff's *respondeat superior* claims do not allege any personal involvement by these Defendants in the alleged underlying constitutional violations to the extent they are brought.  The Plaintiff has failed to overcome his "heavy burden" to establish a claim for supervisory liability.

### 2.  Conspiracy

The Plaintiff alleges throughout his Complaint that various combinations of the Defendants entered into a conspiracy against him.  The Plaintiff is not specific as to whether he is alleging his conspiracy claims under 42 U.S.C. § 1985(3) or under state law.

### a.  Claims under 42 U.S.C. § 1985

The Fourth Circuit has put forth a "relatively stringent standard for establishing section 1985 conspiracies."  Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995).  To state a claim under § 1985(3), a Plaintiff must allege,

 (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Id. at 1376 (citations omitted).  Additionally, the Plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights."  Id. at 1377.

The Plaintiff alleges that Defendant Amason was the genesis of a conspiracy that eventually involved Defendants Thompson, Seward, Florian, McKay, and Janes Doe(s). (See Dkt. No. 1 ¶¶ 1.3.5; 3.5; 6.3; 11.)  The Plaintiff alleges Defendant Sellers conspired to "breach and botch" his disciplinary hearing.  (Id. ¶ 4.8.)  The only evidence in the record regarding a conspiracy is the Plaintiff's own allegations, which are vague and conclusory.  The record does not contain any evidence that any of these individuals acted against the Plaintiff "motivated by a specific class-based, invidiously discriminatory animus." Simmons, 47 F.3d at 1376.  Additionally, there is no evidence in the record tending to prove any of these individuals "deprived the plaintiff of the equal enjoyment of rights secured by the law to all."  Id.  Viewing the facts in a light most favorable to the Plaintiff, this court finds that there is no genuine issue of material fact as to the Plaintiff's conspiracy claims under § 1985.

### b.  Civil Conspiracy

Under South Carolina law, "[t]he tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage." Hackworth v. Greywood at Hammett, LLC, 385 S.C. 110, 115, 682 S.E.2d 871, 874 (Ct. App. 2009).  "[I]n order to establish a conspiracy, evidence, direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." Pye v. Estate of Fox, 369 S.C. 555, 567, 633 S.E.2d 505, 511 (2006) (quoting Island Car Wash, Inc. v. Norris, 292 S.C. 595, 601, 358 S.E.2d 150, 153 (Ct.App.1987)).  "The gravamen of the tort of civil conspiracy is the damage resulting to the plaintiff from an overt act done pursuant to the

combination, not the agreement or combination per se." <u>Id.</u>, at 567-68. "If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." <u>Hackworth</u>, 385 S.C. at 117.

  In the case at bar, the Plaintiff has failed to produce any evidence that tends to prove the alleged Defendants joined together for the purpose of injuring the Plaintiff. Additionally, South Carolina requires a specific listing of special damages to establish a claim for civil conspiracy. (<u>Id.</u>) The Plaintiff listed all of the damages he is seeking in a list at the end of his Complaint. (Dkt. No. 1 at 34.) This is not sufficient under South Carolina law. This court finds there is no genuine issue of material fact as to the Plaintiff's civil conspiracy claim and that the Plaintiff failed to properly plead the claim by not alleging any special damages.

### 3. Any Remaining Claims

  As to any remaining claims, the Plaintiff has not met the requirements of Rule 8 of the Federal Rules of Civil Procedure which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This court has liberally read the Plaintiff's Complaint. A complaint must give a defendant notice of the claims against him. <u>Pringle</u>, No. 2:06-CV-3295-PMD, 2007 WL 295629, at *5. As the court cannot glean any more possible claims out of the Plaintiff's Complaint, any other claims the Plaintiff attempted to assert were not sufficiently pleaded to give a defendant notice of the claims against him.

### <u>CONCLUSION</u>

  Therefore, this court finds, in viewing the facts in a light most favorable to the Plaintiff, there is no genuine issue of material fact as to the Plaintiff's claims, and this court recommends concluding that the Defendants are entitled to summary judgment as a matter of law. Wherefore,

it is RECOMMENDED that the Motion for Summary Judgment on Behalf of Defendants Amason, Byers, Chisum, Evry, Florian, McKay, Michelle, Sellars, Seward and Thompson (Dkt. No. 55) be GRANTED.[9]

IT IS SO RECOMMENDED.


August 3, 2015

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE



**THE PARTIES' ATTENTION IS DIRECTED TO THE IMPORTANT**

**NOTICE ON THE FOLLOWING PAGE.**

---

[9]  The only remaining defendant addressed in this Report and Recommendation is Jane Doe(s). A summons was issued for Jane Doe(s) on May 12, 2014.  The summons was never served and was returned as unexecuted on July 3, 2014.  (Dkt. Nos. 36; 45.)  As the Plaintiff has never personally served Jane Doe(s) as required by Rule 4(c) of the Federal Rules of Civil Procedure, this court recommends the case against Jane Doe(s) be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).